UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                    )<br>              *Plaintiff*              )<br>                                                    )<br>v.                                              )<br>                                                    )<br>JUDITH A. PUTZEL, et al.,         )<br>                                                    )<br>              *Defendants*         ) | Civil No. 06-203-DBH |

*RECOMMENDED DECISION ON*
*CROSS-MOTIONS FOR SUMMARY JUDGMENT*

In this action to collect an erroneously disbursed tax refund, the United States of America ("Government") seeks summary judgment against the defendant taxpayers, former spouses Judith A. Putzel and Stephen M. Price, on grounds that there is no dispute that it is entitled to recover the wrongly disbursed sum from one or both of them. *See* United States' Motion for Summary Judgment ("Government's S/J Motion") (Docket No 19); Memorandum in Support of United States' Motion for Summary Judgment ("Government's S/J Memorandum"), filed therewith, at 1, 9. Price has filed a cross-motion for summary judgment as to the government's claim against him, asserting that (i) the government concedes that Putzel is liable for the full amount of the repayment unless she can show that monies from a joint account used to make estimated tax payments were hers alone, and (ii) she cannot do so. *See* Motion for Summary Judgment of Defendant Stephen M. Price ("Price's S/J Motion") (Docket No. 21); Memorandum in Support of the Objection and Cross Motion for Summary Judgment of Defendant Stephen M. Price ("Price's S/J Memorandum"), filed

therewith, at 5-8.[1] For the reasons that follow, I recommend that the government's motion be granted as to Putzel but denied as to Price, and that Price's cross-motion be granted.

## I. Summary Judgment Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni*, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any

---

[1] The government initially sued Putzel only. *See* Complaint ("Putzel Complaint") (Docket No. 1). Based on Putzel's defenses, it later brought a separate action against Price. *See* Complaint (Docket No. 1), Civil No. 07-97-DBH. By order of the court dated August 18, 2007, the separate suits against Putzel and Price were consolidated under the original docket number, Civil No. 06-203-DBH, and the case bearing Docket No. 07-97-DBH was statistically closed. *See* ECF Docket (entry of August 18, 2007).

essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id*. (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*.  Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.  As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 7.2(b)

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of the District of New Hampshire, which provide, in relevant part:

> (b) Summary Judgment Motions.
>
> (1) Memorandum in Support.  A memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried.
>
> (2) Memorandum in Opposition.  A memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial.  All properly supported material facts

> set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.

Loc. R. 7.2(b).

Parties ignore local rules pertaining to summary judgment practice at their peril. *See, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Context

In support of its motion, the government submits a statement of material facts that Price admits, and Putzel does not controvert. *See* Statement of Facts ("Government's SMF"), commencing on page 2 of Government's S/J Memorandum, ¶¶ 1-18; Price's S/J Memorandum at 3; Memorandum in Support of the Objection of Judith Putzel to the Motion for Summary Judgment of the United States of America ("Putzel's S/J Memorandum"), filed with Objection of Judith Putzel to the Motion for [] Summary Judgment of the United States of America (Docket No. 22). In support of his motion, Price submits a statement of material facts that the government does not controvert and to which Putzel tenders no response. *See* Statement of Material Facts ("Price's SMF"), commencing on page 3 of Price's S/J Memorandum, ¶¶ 1-8; United States' Response to Stephen M. Price's Motion for Summary Judgment ("Government's S/J Response") (Docket No. 23); ECF Docket. Finally, in opposition to the government's motion, Putzel submits evidence and asserted

facts.  *See* Putzel's S/J Memorandum & exhibits filed therewith.  In accordance with Local Rule 7.2(b), these statements are deemed admitted to the extent properly supported, as follows:[2]

In 2003, Putzel and Price were a married couple who made estimated tax payments throughout the course of the year.  Government's SMF ¶ 1; Exh. 1 to Declaration of Andrea A. Kafka ("Kafka Decl."), filed therewith.  With respect to the 2003 tax year, four estimated tax payments were made in the amount of $11,580 each.  *Id*.  Those payments were made via four checks dated April 14, 2003, June 15, 2003, September 1, 2003 and January 10, 2004.  *Id*.  The first two payments came from a joint checking account, and the last two from an account listing Putzel as trustee.  Government's SMF ¶ 2; Exh. 1 to Kafka Decl.  The first two checks, dated April 14, 2003, and June 15, 2003, were written and signed by Price, and both listed the Social Security numbers of both Putzel and Price.  Government's SMF ¶ 3; Exh. 1 to Kafka Decl.  The latter two checks were written and signed by Putzel from the account listing her as a trustee.  *Id*.

In August 2003, Putzel and Price separated.  Government's SMF ¶ 4; Exh. 3 to Kafka Decl.  Before the separation, they had always filed joint tax returns.  *Id*.  However, as a result of their separation, they filed separate 1040 returns for 2003.  Government's SMF ¶ 4; Exhs. 2-3 to Kafka Decl.  Putzel and Price each claimed credit for the estimated tax payments, although in differing

---

[2] Putzel, who is proceeding *pro se*, fails to comply with Federal Rule of Civil Procedure 56(e) and Local Rule 7.2(b)(2) in that she intermingles facts and argument in her opposition memorandum, rather than incorporating a separate statement of facts, *see generally* Putzel's S/J Memorandum, and offers unauthenticated correspondence (letters and e-mail), and a one-page, unauthenticated excerpt from a purported court order, in support of her opposition to summary judgment, *see* exhibits filed therewith; *see also, e.g., Bader v. Wren*, 532 F. Supp.2d 308, 309 n.1 (D.N.H. 2008) ("A motion for summary judgment must be accompanied by a statement of material facts supported by appropriate record citations, and any opposition must state which facts are disputed with similarly appropriate record citations.  The record that is relied upon to demonstrate that there are no genuine issues of fact must contain admissible evidence.  Here, plaintiff neglected to authenticate any of the documents appended to his brief in support of his argument, rendering those documents that are not self-authenticating inadmissible, and the citations to them, therefore, inappropriate.") (citations omitted).  A litigant's *pro se* status does not relieve him or her of the duty to comply with applicable procedural rules.  *See, e.g., Dolan v. SunGard Sec. Fin., LLC*, Civil No. 06-CV-43-JD, 2007 WL 4287722, at *1 n.2 (D.N.H. Dec. 5, 2007).  Putzel's asserted facts hence are not cognizable.  In any event, as discussed in my Analysis section, below, Putzel's evidence is not outcome-determinative.

amounts. Government's SMF ¶ 5; Exhs. 2-3 to Kafka Decl. Putzel filed her 2003 federal income tax return on April 12, 2004 as "head of household." Government's SMF ¶ 6; Exh. 2 to Kafka Decl. She claimed the full amount paid from the estimated tax payments made toward the 2003 federal income taxes, $46,320. *Id.* On her return, she claimed a refund of $44,000. Government's SMF ¶ 7; Exh. 2 to Kafka Decl. On June 7, 2004, she was sent a refund check from the Internal Revenue Service ("IRS") in the amount of $44,000, which included credit to her account from the total amount of all four estimated tax payments over the course of 2003 and early 2004. Government's SMF ¶ 7; Exhs. 2, 4 to Kafka Decl. Putzel does not dispute that she received a tax refund of $44,000. Government's SMF ¶ 8; Putzel Complaint ¶ 9; Amended Answer and Cross-Claim (Docket No. 15) ¶ 9.

Price filed his 2003 federal income tax return on October 15, 2004. Government's SMF ¶ 9; Exh. 3 to Kafka Decl. He filed his return as "married filing separately." *Id.* He claimed $11,472 as his credit for the estimated tax payment. *Id.* He arrived at this amount through use of the Internal Revenue Code § 6015, former Regulation 1.6015(b)-1(b). Government's SMF ¶ 10; Exh. 3 to Kafka Decl. Price claims he is due credit only for the first two estimated payments, made on April 14, 2003 and June 15, 2003, in proportion to his tax liability, as those are the only two that were made when he and Putzel were living together as a married couple. Government's SMF ¶ 11; Exh. 3 to Kafka Decl. Price acknowledges that the final two estimated payments should not be credited to his account. Government's SMF ¶ 12; Exh. 3 to Kafka Decl. The IRS sent Price's refund in two installments. Government's SMF ¶ 13; Exh. 5 to Kafka Decl. The first, on April 11, 2005, was in the amount of $2,526.30, and the second, on April 25, 2005, was in the amount of $6,013.86, for a total of $8,540.16. *Id.* Price does not dispute receiving these two refunds. Government's SMF ¶ 14;

6

Price Complaint ¶¶ 12-13; Answer and Affirmative Defenses (Docket No. 3), Civil No. 07-97-DBH, ¶¶ 12-13.

Both Putzel and Price claimed the estimated payment in an amount of $11,472, and both received the benefit of it, resulting in an erroneous refund of $11,472.  Government's SMF ¶ 16; Exhs. 2-5 to Kafka Decl.  Price filed his returns in accordance with former 26 C.F.R. § 1-6015(b)-1(b).  Government's SMF ¶ 18; Exh. 3 to Kafka Decl.  That resulted in the following allocation of estimated tax payments: (i) check dated April 14, 2003, $5,844 to Putzel and $5,736 to Price; (ii) check dated June 15, 2003, $5,844 to Putzel and $5,736 to Price; (iii) check dated September 1, 2003, $11,580 to Putzel; and (iv) check dated January 10, 2004, $11,580 to Putzel, for a total of $34,848 allocated to Putzel and $11,472 allocated to Price.  Government's SMF ¶ 17; Exh. 3 to Kafka Decl.  The numbers were arrived at by taking each party's tax liability for 2003 (Putzel's was $3,384 and Price's $3,321), calculating the pro-rata share of the total liability (50.47 percent for Putzel and 49.53 percent for Price), and allocating the first two estimated tax payments, of $11,580 each, in accordance with each person's pro-rata share of the couple's total tax liability.  *Id*.  Putzel did not file her return in accordance with those calculations, instead claiming credit for the $11,472 allocated to Price, resulting in a total claim of estimated tax payments of $46,320.  Government's SMF ¶ 18; Exh. 2 to Kafka Decl.

In 2003, Putzel and Price owned a joint checking account at the Savings Bank of Walpole, Account No. 301-067848.  Price's SMF ¶ 1; Defendant Stephen M. Price's First Request for Admissions ("Price Requests"), filed therewith, ¶¶ 1-2; Putzel's answer to Price's First Request for Admissions ("Putzel Answers"), filed therewith, ¶¶ 1-2.  The contract of account with the Savings Bank of Walpole was a joint account with rights of survivorship, authorizing both parties to deposit and withdraw funds from the account.  Price's SMF ¶ 2; Savings Bank of Walpole account

7

information, Exh. 3 thereto.  Putzel and Price both made deposits into the joint checking account at the Savings Bank of Walpole from which the April 2003 and June 2003 federal income tax payments were paid.  Price's SMF ¶ 3; Affidavit of Stephen M. Price in Support of Objection to the Motion for Summary Judgment of the United States and in Support of Price's Cross Motion for Summary Judgment ("Price Aff."), filed therewith, ¶ 2.  All of Price's wages and Putzel's wages were deposited into the account, and Price and Putzel used it to pay their joint household expenses, including federal income tax payments.  *Id.*

Both Putzel and Price had authority to make deposits into and withdrawals from the joint account.  Price's SMF ¶ 4; Price Requests ¶ 4; Putzel Answers ¶ 4.  From January to July 2003, Putzel and Price had authority to write checks and to make electronic payments from the joint account.  Price's SMF ¶ 5; Price Requests ¶ 5; Putzel Answers ¶ 5.  From January to July 2003, both Putzel and Price deposited funds into the joint account.  Price's SMF ¶ 6; Price Requests ¶¶ 6-7; Putzel Answers ¶¶ 6-7.  The estimated tax payments made by Price and Putzel in April and June 2003 of $11,850 each were paid by checks from the joint account containing the names of both Price and Putzel and signed by Price.  Price's SMF ¶ 8; Exh. 1 to Kafka Decl.

### III.  Analysis

The government invokes 26 U.S.C. § 7405 in aid of its bid to recoup, with interest, $11,472 it erroneously refunded to Putzel, or to a combination of Putzel and Price.  *See* Government's S/J Memorandum at 6-7.  Section 7405 provides, in relevant part: "Any portion of a tax imposed by this title which has been erroneously refunded . . . may be recovered by civil action brought in the name of the United States."  26 U.S.C. § 7405(b).   The government concedes that it bears the burden of proving, by a preponderance of the evidence, that a refund was made, that the refund was improper, and the amount of the refund.  *See* Government's S/J Memorandum at 7-8; *see also, e.g., United*

8

*States v. Campbell*, No. 03-CV-6062T, 2003 WL 23241957, at *2 (W.D.N.Y. Dec. 18, 2003) ("The Government, in order to prove that it is entitled to recover an allegedly erroneous tax refund, must demonstrate by a preponderance of the evidence: (1) that a refund was made; (2) the amount of the refund; and (3) that the refund was improper."); *United States v. Reagan*, 651 F. Supp. 387, 388 (D. Mass. 1987) ("The United States has the burden to prove that an erroneous refund was made, and the amount of the refund."). Both Putzel and Price concede that the government issued an erroneous refund in the amount of $11,472. *See* Price's S/J Memorandum at 3; Putzel's S/J Memorandum at 5. The only contested issues are (i) whether Putzel alone is liable for repayment of the wrongly disbursed refund, and (ii) whether she must pay interest on that amount. *See generally id.*[3]

As both the government and Price point out, *see* Government's S/J Memorandum at 9; Price's S/J Memorandum at 2, the IRS has long taken the position, espoused in former 26 C.F.R. § 1.6015(b)-1(b), that in cases in which married persons filing separately do not agree on the allocation between them of tax payments made, the IRS will allocate the payments in proportion to the spouses' separate tax liability for that year, *see, e.g.*, Internal Revenue Manual § 25.18.2.6(2) (2008) ("If spouses file a joint declaration of estimated tax and file separate returns, they may allocate the payments in any consistent manner that they may agree upon. If they cannot agree, the payment should be allocated in proportion to the tax liability reported on the returns[.]"); IRS Chief

---

[3] "Congress has enacted only one statutory barrier to the government's authority to recover erroneously issued tax refunds – a two year statute of limitations." *Campbell*, 2003 WL 23241957, at *2 n.2; *see also* 26 U.S.C. § 6532(b) ("Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact."). For purposes of section 6532(b), a refund is made on the date of payment by the U.S. Treasury, *i.e.*, the date the check clears the Federal Reserve. *See, e.g., United States v. Commonwealth Energy Sys. & Subsidiary Cos.*, 235 F.3d 11, 14 (1st Cir. 2000). The government contends, and neither Price nor Putzel disputes, that its suit against each was timely filed. *See* Government's S/J Memorandum at 7; *see generally* Price's S/J Memorandum at; Putzel's S/J Memorandum. Suit was filed against Putzel on June 2, 2006, *see* ECF Docket, and against Price on April 4, 2007, *see* ECF Docket, Civil No. 07-97-DBH. The government represents that the erroneous refund check sent to Putzel cleared the Federal Reserve on June (*continued on next page*)

Counsel Advisory 200130036, 2001 WL 847704 (July 27, 2001) ("Although section 6015 of the [Internal Revenue] Code was repealed in 1984 . . ., the [Internal Revenue] Service has continued to use the allocation rules set forth in section 1.6015(b)-1(b). . . . The allocation rules of section 6015 set forth a rational means of dividing joint estimated tax payments, and should continue to be followed."). The United States District Court for the District of Massachusetts has assumed, without deciding, that despite the repeal, "insofar as Regulation 1.6015 represents a facially rational method for dealing with the problem of jointly made but separately claimed estimated tax payments, the IRS is entitled to employ that regulation to determine the proper method of allocating credits against such payments." *United States v. Bell*, 818 F. Supp. 444, 448 n.6 (D. Mass. 1993). Inasmuch as neither Putzel nor Price challenges the IRS's authority to apply that methodology, *see generally* Price's S/J Memorandum; Putzel's S/J Memorandum, I shall assume its authority to allocate, as well.

The government concedes that Price correctly employed the methodology set forth in former section 1.6015(b)-1(b) in allocating a portion of the couple's 2003 estimated tax payments to himself. *See* Government's SMF ¶¶ 17-18. It acknowledges that collecting the erroneous refund from Putzel alone "would be legally proper." *See* Government's S/J Memorandum at 9. It explains, though, that "in the event the court agrees with Ms. Putzel that all the money in the joint account that went towards the estimated tax payments was hers and she should be entitled to full credit for all estimated tax payments made for the 2003 tax year, then the United States would have made an erroneous credit resulting in an erroneous refund to Mr. Price." *Id*.

Putzel evidently does not continue to press the point that money from the couple's joint account used to make estimated tax payments in April and June 2003 was in fact hers. She omits

---

8, 2004, and the erroneous refund checks sent to Price cleared the Federal Reserve after April 11, 2005 and April 25, 2005, the dates on which they were sent to him. *See* Government's S/J Memorandum at 7.

10

mention of it from her brief opposing the government's motion for summary judgment, *see* Putzel's S/J Memorandum at 4-6, and files no response to Price's cross-motion for summary judgment, *see* ECF Docket.  In any event, even assuming *arguendo* that she does continue to press this point, she does not controvert Price's evidence that, through July 2003, the account from which the two tax payments were made was a joint account that she and Price both were authorized to use and into which both of them deposited funds, including their wages.  Putzel does contend, however, that Price should be found liable for repayment of the erroneous refund on grounds that (i) she informed him, prior to the couple's final divorce hearing, that she was claiming both estimated payments, (ii) neither he nor his attorney contested that fact, and (iii) the presiding judge then issued a ruling dividing their property. *See id.*  In so stating, she apparently means to argue that the couple arrived at an agreement as to allocation of the tax payments and/or that she obtained a decree, incident to her divorce, allocating them.  Such an agreement or decree would be controlling. *See, e.g.*, Internal Revenue Manual § 25.18.2.6(2) (2008); IRS Chief Counsel Advisory 200130036, 2001 WL 847704 (July 27, 2001).

Nonetheless, as noted above, Putzel's evidence is not cognizable on summary judgment, and that alone is fatal to her bid to demonstrate the existence of a triable issue.  In any event, even if her evidence were cognizable, it would change nothing.  That evidence includes, in relevant part, copies of (i) a letter dated April 13, 2004 in which Price's accountant inquired of her accountant what amount of the two estimated tax payments made while the couple was living together would be available for Price's returns, *see* Letter dated April 13, 2004 from Thomas B. Bates to Robert M. Mucha, CPA, filed with Putzel's S/J Memorandum; (ii) a letter dated July 27, 2004 from her accountant to Price's accountant stating that Putzel claimed all estimated tax payments, Letter dated July 27, 2004 from Robert M. Mucha, CPA to Thomas S. Bates, CPA, filed with Putzel's S/J

11

Memorandum, and (iii) one page of a document that she represents, in her memorandum, is a copy of page 6 of the final divorce decree issued by Justice David B. Sullivan, *see* Putzel's S/J Memorandum at 3, 5-6 & Exh. 9 thereto.  She relies on an excerpt from the purported divorce decree stating:

> Each party is awarded, free and clear of any interest of the other party, all intangible personal property in their respective names and possession, including all bank accounts, stocks and bonds, provided they have been disclosed on that party's financial affidavit, subject to the financial statement set forth below.  This provision is by agreement[.]

Putzel's S/J Memorandum 5-6 (quoting Exh. 9 thereto).  She does not provide copies of the financial affidavits or financial statement referred to in the paragraph above.

This evidence falls short of demonstrating a triable issue as to the existence of an agreement between Putzel and Price regarding allocation of the estimated tax payments made in April and June, 2003.  Absent circumstances in which silence fairly could be equated with assent, the fact that Putzel informed Price that she intended to claim the payments, and he then said nothing, does not evidence a meeting of the minds.  *See Poland v. Twomey*, 937 A.2d 934, 936 (N.H. 2007) ("A meeting of the minds occurs when there is mutual assent to the essential terms of the contract; that is, the parties have the same understanding of the essential terms of the contract and manifest an intention to be bound by the contract.").  Putzel does not show that the circumstances were such as to permit a trier of fact fairly to equate silence with affirmance.  To the contrary, Price's eventual response was to file a return claiming some of the payments as his.  Nor can the above-quoted language from the purported divorce decree, standing alone, fairly be read to arrogate to Putzel the sole right to claim estimated tax payments, including payments made from the couple's joint bank account, on her 2003 return.

In the absence of evidence raising a triable issue that monies paid out of the couple's joint account in April and June 2003 actually were Putzel's, or that Price and Putzel agreed on an allocation of those tax payments, or were directed by court order to allocate them a certain way, Price correctly allocated the couple's tax payments in accordance with IRS policy and practice. His motion for summary judgment accordingly should be granted.[4]

In opposing the government's bid for summary judgment, Putzel finally argues that, to the extent she is found liable for repayment of the $11,472 refund, she should not have to pay interest thereon given the manner in which this matter has been handled by the IRS. *See* Putzel's S/J Memorandum at 2-4. She asserts that the IRS frustrated her efforts to resolve this matter promptly by failing to inform her for more than a year why it considered her refund erroneous, and that, when it became clear to her that interest was accruing, she attempted to stop its accrual by various means, including the tendering of a check to the government. *See id*. Again, even assuming *arguendo* that her evidence in support of this point were cognizable, it would make no difference. Putzel tenders copies of correspondence with the IRS to show that the IRS (i) failed initially to explain why it considered a portion of her refund erroneous, (ii) stated that, in lieu of accepting a check she had

---

[4] In opposing Price's cross-motion for summary judgment, the government argued that the dispute between the ex-spouses, however it might play out, had no bearing on their combined liability to repay the erroneous refund and, accordingly, the court should enter summary judgment against Putzel and Price jointly in the amount of $8,540.16, plus interest, and against Putzel for the remaining $2,931.84, plus interest. *See* Government's S/J Response at 1-2. As Price protests, *see* Reply to United States of America's Response to Motion for Summary Judgment of Defendant Stephen M. Price (Docket No. 25) at 2, this represents an eleventh-hour shift in the relief requested by the government. In its complaint against Price and in other documents, including its memorandum in support of its own motion for summary judgment, the government took the position that any cause of action it night have against Price hinged on the success of Putzel's assertion that the estimated tax payments in question were paid from her individual funds. *See* Price Complaint ¶¶ 14-17; Memorandum in Support of Assented-to Motion To Consolidate, filed with Assented-to Motion To Consolidate (Docket No. 8) at 2-3; Government's S/J Memorandum at 2, 9. The government's seeming change of heart regarding the nature of the relief requested comes too late. *See, e.g., Logiodice v. Trustees of Me. Cent. Inst.*, 170 F. Supp.2d 16, 30-31 n.12 (D. Me. 2001), *aff'd*, 296 F.3d 22 (1st Cir. 2002) (declining to consider "theory of liability . . . not detectable in the Complaint"; observing, "Plaintiffs are not entitled to raise a new theory of liability for the first time in opposition to a motion for summary judgment."); *see also, e.g., Torres-Rios v. LPS Labs., Inc.*, 152 F.3d 11, 15-16 (1st Cir. 1998) (district court did not abuse discretion in denying, as belated, motion to amend complaint to add claim raised for first time in opposition to motion for summary judgment).

13

tendered under protest, it would apply a tax overpayment from a later year against the erroneously refunded amount, thereby stopping interest from accruing as of April 15, 2007, and (iii) remitted a check in the full amount of the later year's overpayment to her rather than applying it in part toward the erroneously refunded amount. *See* Exhs. 1-8 to *id*.

However, as the government points out, *see* Government's S/J Memorandum at 9-10, assessment of interest from the date of payment of an erroneous refund is mandatory pursuant to 26 U.S.C. § 6602, *see* 26 U.S.C. § 6602 ("Any portion of an internal revenue tax (or any interest, assessable penalty, additional amount, or addition to tax) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, *shall* bear interest at the underpayment rate established under section 6621 from the date of the payment of the refund.") (emphasis added). That said, the government overlooks a separate, equally mandatory, abatement provision pursuant to which "[t]he Secretary *shall* abate the assessment of all interest on any erroneous refund under section 6602 until the date demand for repayment is made, unless . . . **(A)** the taxpayer (or a related party) has in any way caused such erroneous refund, or **(B)** such erroneous refund exceeds $50,000." *Id*. § 6404(e)(2) (emphasis added). Inasmuch as the government has adduced no evidence that Putzel caused the erroneous refund, and the refund does not exceed $50,000, Putzel is entitled to abatement of interest until the time demand was made upon her to repay the refund.[5]

Beyond this, the court has no power to order the relief Putzel has requested in the form of an abatement of interest. The statutory scheme of mandatory interest accrual, combined with mandatory abatement in specified circumstances, makes reasonably clear that, in erroneous-refund situations, Congress meant to leave no room for court-ordered abatement of interest on equitable or

---

[5] This also is consistent with the relief requested in the government's complaint. While, in its memorandum, the government indicates it seeks interest running from the date of payment (on or about June 8, 2004), *see* Government's S/J Memorandum at 10, it alleged in its complaint that Putzel was liable for "the erroneously refunded amount of $11,472.00 (*continued on next page*)

14

other grounds. *See United States v. Colorado Mufflers Unlimited, Inc.*, 116 Fed. Appx. 218, 223 (10th Cir. 2004) (court erred in treating amount of interest to be assessed on erroneous refund as a factual question that the government had the burden of proving when, pursuant to section 6602, "prejudgment interest is mandated by statute and the amount owed is a matter of law, not evidence"); *United States v. Mount Sinai Med. Ctr. of Fla., Inc.*, No. 02-22715-CTV-GOLD/TU, RNOFF, 2005 WL 3956649, at *2-*3 (S.D. Fla. Dec. 6, 2005) (rec. dec., *aff'd* Jan. 9, 2006), *vacated on other grounds*, 486 F.3d 1248 (11th Cir. 2007) ("Generally speaking, courts cannot alter interest schemes that are fixed by the [Internal Revenue] Code. . . . The relief requested by the Defendant is clearly outside the parameters of this Court's discretion and jurisdiction. It might well be unfair and inequitable to include the refunds returned to the residents in the interest calculation. However, abatement is granted solely pursuant to the elements of § 6404 – fairness and equity cannot be considered. Most importantly, it would be plain error for this Court to go beyond the scope of the Code – an Act of Congress – in the interest of obtaining an evenhanded result.").

## IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the government's motion for summary judgment as to Putzel, with the proviso that interest be abated pursuant to 26 U.S.C. § 6404(e)(2) until the date demand for repayment was made, **DENY** the government's motion for summary judgment as to Price, and **GRANT** Price's cross-motion for summary judgment.

---

plus interest from March 25, 2005 – the date of the demand for repayment." Putzel Complaint ¶ 12.

15

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge